UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:19-cv-10084-KMM

RONALD T. GALLO,

    Plaintiff,

v.

KILOLO KIJAKAZI,[1] Commissioner of
Social Security Administration,

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS MOTIONS FOR SUMMARY JUDGMENT**[2]

This matter is before the Court on Plaintiff Ronald T. Gallo's ("Plaintiff" or "Gallo") *ore tenus* Cross Motion for Summary Judgment, made by Plaintiff at a hearing before the undersigned on June 1, 2021. ECF No. [23]. In response, Defendant, the Commissioner of Social Security ("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting Memorandum of Law on June 22, 2021 ("Defendant's Motion"). ECF No. [25]. On July 15, 2021, a hearing was scheduled for the purpose of allowing Plaintiff to reply to Defendant's Motion, but Plaintiff did not make an appearance. ECF No. [27]. The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied. After a review of the Motions, the record,

---

[1] Kilolo Kijakazi is serving as the Social Security Administration's Acting Commissioner.

[2] On May 30, 2019, this matter was referred to the undersigned for all pre-trial, non-dispositive matters, and for a Report and Recommendation on any dispositive matters. ECF No. [2].

and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED**, and Defendant's Motion be **GRANTED**.

I.     PROCEDURAL HISTORY

On May 30, 2019, Plaintiff filed the Complaint, requesting review of the ALJ's decision. ECF No. [1]. Thereafter, on October 11, 2019, the Court entered a Scheduling Order to ensure the orderly and efficient disposition of the matter. ECF No. [6]. Specifically, Plaintiff was directed to file a motion for summary judgment within thirty (30) days from the date that Defendant filed its answer and the administrative record of the proceedings. *Id.* On July 13, 2020, Defendant filed its Answer, ECF No. [16], and the administrative record, ECF No. [17]. Despite the Court's Order setting the briefing schedule, Plaintiff failed to file his motion for summary judgment, and on February 18, 2021, the Court entered an Order to Show Cause, requiring Plaintiff to: (1) show cause as to why this Court should not recommend that the District Court dismiss his lawsuit for failure to prosecute; and (2) respond, in writing, to this Court's Order by either filing the required motion for summary judgment or by a show of cause as to why he is unable to do so. ECF No. [18]. Pursuant to the undersigned's Order to Show Cause, Plaintiff was required to respond no later than Thursday, March 4, 2021.

On March 3, 2021, Plaintiff filed a document titled "Response To Order To Show Cause." ECF No. [19]. Plaintiff did not file the required motion for summary judgment; instead, Plaintiff requested an extension of time given his *pro se* status and his inability to get an attorney. ECF No. [19]. ECF No. [20]. Given that Plaintiff had over a year to find counsel and had since July 2020 to file his motion for summary judgment, the Court entered its Second Order To Show Cause on March 3, 2021. requiring Plaintiff to file the requested motion for summary judgment within thirty (30) days from March 3, 2021. *Id.* On March 19, 2021, Plaintiff filed a document titled "Response

2

To Second Order To Show Cause." ECF No. [21]. Therein, Plaintiff stated that he was unable to file his own motion for summary judgment due to his dyslexia and his inability to find a lawyer, and requested leave to proceed by oral argument. *Id.* On April 12, 2021, the Court set the matter for telephonic oral argument on June 1, 2021. ECF No. [22].

During oral argument, Plaintiff adopted the arguments set forth in his Complaint as his arguments on summary judgment, and the Court accepted those arguments as Plaintiff's *ore tenus* Motion for Summary Judgment. ECF No. [23]. Before concluding the hearing, the Court directed Defendant to file its response to Plaintiff's *ore tenus* Motion for Summary Judgment and/or its own motion for summary judgment. *Id.* In addition, the Court made clear to Plaintiff that if the Court were inclined to agree with the government's response, the Court would set another hearing so that Plaintiff could state his response.

On June 6, 2021 Defendant filed it Motion for Summary Judgment. ECF No. [25]. Thereafter, the Court set the matter for a second telephonic oral argument for July 15, 2021, to give Plaintiff an opportunity to reply to Defendant's Motion for Summary Judgment. ECF No. [26]. However, Plaintiff failed to appear at the hearing and as of the date of the filing of this Report and Recommendation, has not filed any reply. ECF No. [27].

## II.     BACKGROUND

On July 21, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of January 8, 2016. R. at 72, 156–57.[3] Plaintiff was born on May 1, 1956 and was sixty years old at the time his application was filed. *Id*. at 73. The Social Security Administration ("SSA") initially denied Plaintiff's claim on November 17,

---

[3] References herein to "R. at __" are to the Social Security transcript, the pertinent parts of which can be found at ECF No. [17]. All the page numbers to transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

2016 and denied it again upon reconsideration on October 24, 2017. *Id*. at 72, 81. Plaintiff requested a hearing, which was held on June 4, 2018, in Miami, Florida. *Id*. at 36, 97. A vocational expert, Ms. Drosty ("Drosty" or the "VE"), testified at the hearing. *Id.* at 59.

On August 16, 2018, the ALJ denied Plaintiff's application. *Id*. at 29. On September 10, 2018, Plaintiff requested review of the ALJ's decision. *Id.* at 12. The Appeals Council denied Plaintiff's request for review on April 2, 2019 and affirmed the ALJ's decision. *Id.* at 6. Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action. ECF No. [1].

**A. The SSA Hearing**

Plaintiff was sixty-two years old at the time of the hearing. R. at 40. Plaintiff testified that in the past fifteen years, he has worked as a driver and as a registered representative.[4] *Id.* at 41–42. As a driver, Plaintiff testified that he would drive people from his neighborhood in lower Westchester to the New York airports. *Id.* at 41. Plaintiff would lift his customers' luggage, some weighing up to sixty pounds. *Id.* at 42. Plaintiff testified that he could no longer work as a driver because he had his tailbone and two discs removed from his spine. *Id.* at 42. Specifically, Plaintiff testified that approximately ten years ago he underwent two surgeries: the first surgery for the removal of the L-3 disc, and the second surgery for the removal of the L-4 disc and S-1 tailbone. *Id*. Plaintiff testified that he and his doctor, Dr. Grigory I. Kizelshteyn, were treating Plaintiff's discs with cortisone injections while discussing another surgery. *Id.* However, Plaintiff testified that the possibility of another surgery was postponed when he broke his ankle. *Id.* at 42–43.

---

[4] As the VE clarifies at the hearing, Plaintiff's past work as a stockbroker is properly classified as a registered representative. R. at 60. As such, the term "registered representative" will be used to reference Plaintiff's testimony that he worked as a "stockbroker."

4

As a registered representative, Plaintiff testified that he worked approximately ten hours a day. *Id.* at 43. Plaintiff stated that his "Broker/Dealer" allowed him to work from his home and, as such, Plaintiff was able to take breaks during the day and lay down to release the pressure from his back. *Id.* Plaintiff testified that he could no longer work as a registered representative because the 2008 market crash caused him to lose all his clients. *Id.* at 43. Plaintiff testified that his profession as a registered representative was dependent on his list of clients which, when he lost such clients, made it "virtually impossible" to continue working as a registered representative. *Id.* Specifically, Plaintiff testified that to work as a registered representative, he would need to get sponsored by a broker/dealer to regain his licenses. *Id.* at 44. However, Plaintiff testified that broker/dealers are interested in young individuals that would start off by sitting at a desk for approximately ten hours making phone calls. *Id.*

As to Plaintiff's physical impairments, Plaintiff testified that his pain stems from three places, including his back, his right hip, and his right ankle. *Id.* at 45. As to Plaintiff's right ankle, Plaintiff testified that he broke it in a motor home, when he slipped on a bicycle pump and jammed his right foot in between the seat and the engine compartment of the motor home. *Id.* at 45–46. Plaintiff testified that his initial surgery for his ankle was performed in February 2017, when doctors placed two screws in his ankle. *Id.* at 46. Plaintiff testified that he began to place more pressure on his left-hip because of his right ankle, and during a follow-up visit for his right ankle, Dr. Scott Haig ("Dr. Haig") told Plaintiff that he needed an emergency left hip replacement. *Id.* However, before the left hip replacement surgery, Dr. Haig performed a second surgery on Plaintiff's right ankle in April 2017. *Id.* at 47. Thereafter, Plaintiff's left hip surgery was performed, and Plaintiff testified that he no longer felt pain from his left hip. *Id.* at 46. In September 2017, Plaintiff testified that a third surgery was performed which required a total

reconstruction of Plaintiff's right ankle. *Id.* at 47. Thereafter, Plaintiff stated that he tries to do some exercise, but too much exercise causes his ankle to swell, causing pain and major discomfort. *Id.* Plaintiff testified that he could walk approximately two short blocks, stand for about fifteen minutes before he starts feeling pain, and sit for about twenty minutes before he needs to stand up. *Id.* at 49. Plaintiff testified that he uses a cane daily. *Id.* at 48. Plaintiff also testified that he could lift approximately twenty pounds without experiencing pain; he can't touch his feet or his toes; and he is unable to wear regular shoes. *Id.* at 50. In addition, Plaintiff testified that, while at his house, he would spend his day watching TV and using his computer. *Id.* at 54. Plaintiff would watch TV while either standing or sitting. *Id.*

At the hearing, the VE began by asking Plaintiff whether, as a stockbroker, Plaintiff was a registered representative or worked for another company. *Id.* at 60. Plaintiff testified that he worked as a registered representative. *Id.* The VE then proceeded to testify as to Plaintiff's past relevant work. *Id.* Specifically, the VE categorized Plaintiff's past relevant work using the Dictionary of Occupational Titles ("DOT") as follows: (1) registered representative, as described in DOT 250.257-018, performed at a "sedentary" exertion level, with a Specific Vocational Preparation ("SVP") rating of seven; and (2) chauffeur, as described in DOT 913.663-010, but actually performed at a "medium" exertion level, with an SVP rating of three. *Id.*

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's age, education, and past work history, who is limited to a light level of exertion and has certain limitations. *Id.* Specifically, this hypothetical individual could never climb ladders, ropes or scaffolds; could occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; is to avoid hazards such as moving machinery; and requires a two-minute sit/stand option after every half hour. *Id.* at 61. The VE testified that such a hypothetical individual would be precluded from

performing the job of a chauffeur; however, the VE testified that such an individual would be able to work as a registered representative. *Id.* The ALJ asked the VE whether that same hypothetical individual could perform Plaintiff's past relevant work if he needed to take unscheduled breaks outside the normal eight-hour breaks, which would result in such individual being off-task for more than fifteen percent of the workday. *Id.* at 62. The VE answered that such an individual would be able to perform Plaintiff's past relevant work as a registered representative because such work is skilled and can be performed through self-employment, which allows an individual to sit and stand at will. *Id.*

Next, the ALJ asked the VE whether that same hypothetical individual, though now limited to a sedentary exertional level, would be able to perform Plaintiff's past relevant work. *Id.* at 62–63. The VE testified that such an individual would be able to perform Plaintiff's past relevant job as a registered representative. *Id.* at 63. The ALJ then asked the VE whether that same hypothetical individual would be precluded from performing Plaintiff's past relevant work if such individual had to be absent from work for more than three days a month. *Id.* The VE testified that Plaintiff would still be able to work as a registered representative given the highly skilled and self-employed nature of the job. *Id.* The VE testified that, being self-employed, such an individual would be able determine his own schedule. *Id.*

Finally, the ALJ asked the VE whether a hypothetical individual who works in an office setting and who would need to lay down and be off task for more than fifteen percent of the day would be able to perform Plaintiff's past relevant work. *Id.* at 68. The VE testified that the ALJ's hypothetical resembles an "entirely different DOT Code." *Id*. The VE clarified that Plaintiff's past relevant work as a registered representative, which is a self-employed position, would not require an individual to work from an office. *Id.* The VE testified that the ALJ's hypothetical

7

resembles a similar job, where the individual is employed by a company and required to work in an office setting, which is called a securities trader. *Id.* To that extent, the VE testified that such an individual would be precluded from working as a securities trader because he would not be able to be off task for more than fifteen percent of the day. *Id.* at 68–69.

### B. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

### C. The ALJ's Decision

On August 16, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 8, 2016 through June 30, 2018. R. at 29. In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims. *Id.* at 22–29; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 Fed. App'x at 910. At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since January 8, 2016, the alleged onset date. *Id.* at 24.

At step two, the ALJ determined that Plaintiff suffers from six "severe" impairments: (1) left hip osteoarthritis; (2) lumbar radiculopathy; (3) left knee osteoarthritis; (4) right ankle fracture; and (5) obesity. *Id.* The ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities. *Id.*

---

[6] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a).

9

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7] *Id.* at 25. Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a)[8], except that Plaintiff needs to stand one to two minutes after every thirty minutes of sitting. *Id.* In addition, Plaintiff could never climb ladders, ropes, scaffolds; could occasionally balance, stoop, kneel, crouch and crawl; and Plaintiff would need to avoid hazards such as moving machinery. *Id.*

At step four, the ALJ accepted the testimony of the VE and determined that Plaintiff could perform her past relevant work as a registered representative. *Id.* at 29. The ALJ explained that despite Plaintiff's severe physical impairments, Plaintiff remains capable of performing his past relevant work as a registered representative. *Id.*

Given that the ALJ found Plaintiff was not disabled at step four, the ALJ did not proceed to step five of the evaluation process.

### III.  STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is more than a scintilla, but less than a

---

[7] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. *See* 20 C.F.R. § 416.925.

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV.    ANALYSIS

As stated in Plaintiff's Complaint, ECF No. [1] at 5–6, adopted as his argument on summary judgment, ECF No. [23], Plaintiff contends that the ALJ committed two errors. First, Plaintiff contends that the ALJ failed to consider the entirety of Plaintiff's testimony in assessing whether Plaintiff could return to his past relevant work as a registered representative. ECF No. [1] at 5. Second, Plaintiff contends that the ALJ failed to properly evaluate the opinion rendered by Plaintiff's treating physician, Dr. Haig. *Id.* at 5–6.

11

With respect to Plaintiff's first argument, Defendant responds that the ALJ properly relied on the testimony of the VE to determine that Plaintiff could return to his past relevant work as a registered representative. ECF No. [25] at 8. In addition, Defendant argues that Plaintiff failed to meet his burden of proving that he could not return to his past relevant work as a registered representative. *Id.* at 7–9. As to Plaintiff's second argument, Defendant argues that the ALJ's decision to discount Dr. Haig's opinion was supported by substantial evidence. *Id.* at 16.

### A.  The ALJ Did Not Err At Step Four.

To prevail at step four, Plaintiff has the burden of proving that he could not perform his past relevant work as a registered representative as he performed it or as it is generally performed in the national economy. *See Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986). Plaintiff contends that there are multiple obstacles that would preclude him from working as a registered representative, including the fact that he would need to: (1) work in a traditional office environment, (2) acquire several licenses that he had at one point but that have since lapsed; (3) have a sponsoring broker; and (4) develop a client list. ECF No. [1] at 5–6.

Plaintiff's argument fails because the obstacles he argues that preclude him from returning to work are not due to any physical or mental impairment. To prevail at step four, Plaintiff would need to show that his impairments prevent him from performing his past relevant work. Indeed, "[a] basic program principle is that a claimant's impairment must be the primary reason for his or her inability to engage in substantial gainful work." S.S.R. 82-61, 1982 WL 31387, at *1.

In *Smith v. Commissioner of Social Security Administration*, the plaintiff argued that she could not return to her past relevant job as a tax preparer or as a tax clerk because of her failure to maintain an active license. No. 3:19-CV-24-J-MCR, 2020 WL 897987, at *2 (M.D. Fla. Feb. 25, 2020). The plaintiff did not, however, argue that she was unable reinstate her license, and therefore

return to her past relevant work, due to any physical or mental impairment. *Id.* As such, the court held that the plaintiff failed to meet her burden because she failed to show that she was "unable to work 'by reason' of physical or mental impairment." *Id.*

Here, Plaintiff fails to argue that his inability to return to his past relevant work is due to his physical or mental impairments. Plaintiff merely asserts that that "the position of [r]egistered [r]epresentative is not generally available, and would not be available to him as he lacks certain skills – licenses, sponsor, book of business and additional experience working as a Securities Trader." ECF No. [1] at 6. In fact, Plaintiff testified that the reason he no longer has clients or the required licenses to work as a registered representative is because he lost all his clients after the 2008 market crash and thereafter gave up his licenses. R. at 43–44. However, the fact that he lost his licenses, alone, does not establish an inability to return to his past relevant work. *See Ray v. Bowen*, 813 F.2d 914, 917 (9th Cir. 1986) (finding that substantial evidence supported the ALJ's finding that through a course of study, plaintiff could regain the skills necessary to be reinstated as a licensed practicing accountant, as "atrophy of skills does not prevent one from performing past work for disability purposes"); *see also Whitney v. Berryhill*, No. 1:16-cv-30-EPG, 2017 WL 1356034, *5 (E.D. Cal. Feb. 24, 2017) (finding that ALJ properly determined that claimant could perform past relevant work as a bus driver because she could take "affirmative steps to reactivate her [commercial] driver's license"). Instead, Plaintiff would need to show that his *impairments* preclude him from obtaining his license. However, Plaintiff fails to make such argument and the record does not support such a finding. Likewise, Plaintiff's need to acquire new clientele is also insufficient to establish Plaintiff's inability to return to his past relevant work. Indeed, the VE testified that developing clients is "part of the job" and "that would [not] prevent him from doing that work." R. at 67.

13

Plaintiff also argues that he is unable to return to past relevant work as a registered representative because the position is not generally available. ECF No. [1] at 6. Specifically, Plaintiff argues that his past relevant work as a registered representative is not available as he performed it, given the unique relationship he built over several years with his sponsoring broker. *Id.* Plaintiff contends that his unique relationship with his sponsoring broker is the only reason he was able to work from home. *Id.* To that extent, Plaintiff argues that the job that would be available to him is one as a securities trader, which would require him to work in a traditional office setting. *Id.* at 5–6. However, Plaintiff contends that, in accordance with the VE's testimony, he would not be able to work as a securities trader, given the limitations set by the ALJ. *Id.* at 6. Plaintiff's argument is unpersuasive.

Plaintiff's argument that he is unable to work as a registered representative because he was only able to work from home due to his unique circumstances is unpersuasive. During the ALJ hearing, the VE asked Plaintiff whether he worked for a company as a stockbroker or as a registered representative. R. at 60. Plaintiff specifically stated that he worked as a registered representative. *Id.* A registered representative, as testified to by the VE, is a self-employed position that does not require the traditional office work setting. *Id.* at 60–62. The VE distinguished work as a securities trader—which requires a traditional office setting—to Plaintiff's past relevant work as a registered representative, which does not require an office setting. *Id.* at 68. Therefore, it is clear from the VE's testimony that a registered representative, contrary to Plaintiff's position, can be performed from a home setting.

Finally, Plaintiff's argument that the ALJ erred at step four because the VE testified that he is unable to work as a securities trader also misses the mark. The VE established that Plaintiff's past relevant work was as a registered representative and not a securities trader. Indeed, the VE

specifically testified that a securities trader was a position that required an office setting and was an entirely different DOT code. *Id*. As such, whether Plaintiff could work as a securities trader was immaterial to the ALJ's step four analysis. Ultimately, the ALJ properly relied on the VE's testimony that Plaintiff could perform his past relevant work as a registered representative. Indeed, the VE is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). In the absence of any contrary evidence—including any raised by Plaintiff at the ALJ hearing—the undersigned finds that the ALJ's step-four findings are supported by substantial evidence.

### B. The ALJ Properly Evaluated The Medical Opinion of Dr. Haig.

Plaintiff argues that the ALJ failed to properly evaluate the medical opinion of Dr. Haig.[9] ECF No. [1] at 6–10. Specifically, Plaintiff argues that the ALJ's decision to give Dr. Haig's opinion some weight was based on an incorrect assumption that Dr. Haig's opinion was dated a few weeks after Plaintiff's second ankle surgery. *Id.* at 8–9. Defendant argues that the ALJ provided good reasons for giving Dr. Haig's opinion only some weight, and such reasons were supported by substantial evidence. ECF No. [25] at 15. The undersigned agrees.

The Eleventh Circuit has held that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when a physician's opinion is (1) conclusory, (2) contrary to or unsupported by the record evidence, or (3) inconsistent with the physician's own medical records. *See Carroll v. Comm'r, Soc. Sec. Admin.*, 453 F. App'x 889, 893 (11th Cir. 2011). Two factors that may weigh in favor of discounting a treating physician's

---

[9] At the June 1, 2021 hearing, Plaintiff did not provide argument in support of his position. Plaintiff stated that he was "not big" on this argument and that it was a "throw away."

opinion are when the opinion is inconsistent with the physician's own treatment notes and when the opinion appears to be based primarily on the claimant's subjective complaints of pain. *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). When an ALJ articulates specific reasons for declining to accord the opinion of a treating physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error. *Carroll*, 453 F. App'x at 893 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)). Indeed, a court "will not second guess the ALJ about the weight [a] treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter*, 808 F.3d at 823.

Here, the ALJ provided good cause to afford some weight to Dr. Haig's opinion.[10] As the ALJ states in her decision, Dr. Haig's April 12, 2017 opinion was given only "a few weeks after [Plaintiff] had his [first] ankle surgery," and one day prior to Dr. Haig removing faulty hardware that was surgically placed in Plaintiff's ankle.[11] R. at 28, 320–25. As such, the ALJ found that the limitations set out by Dr. Haig were not entirely supported by the treating record. *Id.* at 28. Indeed, at the time that Dr. Haig rendered his opinion, Plaintiff still had faulty hardware from his first surgery and was put in a non-weightbearing cast. *Id.* at 307. Specifically, during Plaintiff's visit, Dr. Haig noticed that Plaintiff was still in a postoperative splint with a dirty dressing and still

---

[10] On April 12, 2017, Dr. Haig completed a "medical source statement of ability to do work-related activities (physical)." R. at 320–25. In relevant part, Dr. Haig opined that Plaintiff was limited to less than the full range of sedentary work; that Plaintiff could only occasionally lift and carry up to ten pounds; that Plaintiff required the use of a cane to walk; and that Plaintiff could only sit or stand for an uninterrupted period of forty-five minutes. *Id.*

[11] The ALJ's decision states that Dr. Haig's opinion was provided a few weeks after his second ankle surgery. R. at 28. However, Dr. Haig's opinion was actually rendered a few weeks after Plaintiff's first ankle surgery. *Id.* at 320–25. This discrepancy does not impact the ALJ's findings because the ALJ discounted the opinion because it was before corrective surgery which was of course also the case after the first surgery.

had staples in his wound. *Id.* Dr. Haig concluded that Plaintiff's hardware was going to break and decided to put Plaintiff into a short leg cast for non-weightbearing ambulation. *Id.*

Moreover, as the ALJ notes in her decision, after Plaintiff had major corrective surgery on his right ankle in September 2017, his October 2017 treatment notes indicated that he was doing well, he was weight bearing on his right leg ahead of schedule, and his medication was controlling his pain. *Id.* at 390, 528–32. In addition, x-rays of the right ankle showed maintenance and reduction of swelling in the ankle and all the hardware in the appropriate position. *Id.* As such, the undersigned finds that the ALJ's decision to discount Dr. Haig's limitations on standing, walking, and sitting are supported by substantial evidence in the record, and the undersigned will not second guess her decision. *See Hunter*, 808 F.3d at 823. Indeed, Plaintiff's brief reference to a June 2016 MRI of his lumbar spine showing some disc bulges and disc herniation, ECF No. [1] at 9–10, without more, is insufficient to negate the substantial evidence supporting the ALJ's decision. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.").

## V.     RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's *ore tenus* Motion, ECF No. [23], be **DENIED**, and Defendant's Motion, ECF No. [25], be **GRANTED**.

## VI.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within

**FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3 day of August, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**